UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Ah'men McGill,

                Plaintiff,

v.

Jer Yang, acting in his individual capacity
as a Minneapolis Police Officer, and
The City of Minneapolis,

                Defendants.

Case No. _____

**COMPLAINT**

**JURY TRIAL DEMANDED
UNDER FRCP 38(b)**

---

For his Complaint, plaintiff Ah'men McGill ("McGill") states and alleges as follows:

1. This is an action for money damages for the violation of McGill's well-settled rights under the Fourth and Fourteenth Amendments to the United States Constitution. Defendant Jer Yang abused his position of authority by unlawfully seizing Mr. McGill, driving McGill around Minneapolis against his will, and threatening McGill with criminal charges if he did not assist Yang in finding guns. No probable cause existed to detain or otherwise restrict McGill's liberty—much less to lock him in a police vehicle and force him to be an unwilling participant in his illegal quest for weapons. Yang's egregious misconduct exposed his evil motive and callous indifference to McGill's federally protected rights. No reasonable officer would behave the way that Yang did and has been allowed to do by the City of Minneapolis.

2. McGill brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth Amendment to the United States Constitution, and 28 U.S.C. §§ 1331 and 1343(a)(3). The aforementioned statutory and constitutional provisions confer original jurisdiction over this action on this Court. Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2).

3. McGill also brings claims against the City of Minneapolis under *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978).

4. McGill was at all times material herein a citizen of the United States and a resident of the State of Minnesota.

5. Upon information and belief, at all times material hereto, Yang was a United States citizen residing in the State of Minnesota. Yang, acting under color of state law and in his individual capacity, deprived McGill of his constitutional rights and caused him to suffer harm.

6. The City of Minneapolis is a municipality duly incorporated under the laws of the State of Minnesota.

7. On January 8, 2016, Defendant Yang was on duty as a Minneapolis police officer. Around 4:30 in the afternoon, he initiated a traffic stop of a 2001 Mercury Grand Marquis. Yang was alone in his squad car; no other officers were present on the scene.

8. McGill was the driver and sole occupant of the 2001 Mercury Grand Marquis. The vehicle stopped at a gas station and was lawfully parked.

9. Yang approached the driver's-side of the vehicle and immediately ordered the driver to get out. Yang illegally seized McGill and locked him in the back of the squad car.

10. Yang began threatening McGill that he would charge him with unknown criminal offenses unless McGill helped Yang uncover black market guns in Minneapolis. Yang did not issue a citation on January 8, 2016. Instead, he drove McGill to a precinct station and ordered him to get into another police vehicle. McGill's car remained lawfully parked at the gas station. Yang retained the key to the McGill's car.

11. McGill did not know how to obtain black market firearms in Minneapolis.

12. Nothing about McGill or his history would lead a reasonable officer to think that McGill had such information. McGill has never been charged with a gun-related offense, nor does he have a significant criminal history.

13. McGill was captive in the police vehicle with Yang. He could not leave, and, to the best of his knowledge, no one knew where he was. Yang subjected McGill to an unreasonable Fourth Amendment seizure in violation of his well settled Fourth Amendment rights.

14. Yang drove McGill around Minneapolis in the police vehicle. Yang repeatedly told McGill that he had to produce guns by 10 p.m. "or else." McGill believed Yang intended to harm him if he could not find what Yang wanted.

15. After approximately two hours, Yang finally took McGill home. He told McGill to call him if he learned of any guns. He did not issue a citation or otherwise charge McGill with any offense.

16. Upon information and belief, McGill's car was towed to the Minneapolis impound lot pursuant to a police order.

17. On January 11, 2016, after calling McGill via telephone between then and January 8, 2016, Yang went to McGill's residence. Yang left McGill's car key and a citation with McGill's wife. Yang called McGill and left him a voicemail message at 12:05 p.m. on January 11, 2016:

> Hey fella your key is with your mom or whoever that is. Some female at your house. 2509. Dropped it off along with your paperwork. Your car is [inaudible] at your Old Colony. Go pick it up. Go get your plates for it.

18. McGill was afraid to pick up the vehicle given the fact that he could not meet Yang's demands.

19. McGill was charged with misdemeanor traffic offenses and summoned to criminal court. After several months of litigation, the Minneapolis City Attorney's Office dismissed the charges.

20. Yang violated McGill's constitutional rights by his egregious misconduct.

21. Yang was on-duty when the misconduct occurred and his police actions under color of state law culminated in McGill being seized and charged with misdemeanor crimes.

22. Defendant City of Minneapolis had actual knowledge of Yang's propensity for constitutional misconduct. For example, both Yang and the City of Minneapolis have judgments against arising from a Fourth Amendment violation by Yang and *Monell* liability against the City of Minneapolis. *Montgomery v. Devick et al*, 10:12-cv-00757-JRT-JJG (U.S. District of Minn. 2013).

23. Despite Yang's flagrant disregard for the Constitution and his own departmental policies, he remains an active police officer. The City of Minneapolis continues to employee him without discipline or restraint.

4

24. The City of Minneapolis is deliberately indifferent to Yang's pattern of unconstitutional conduct.

25. The City of Minneapolis is constitutionally obligated to stop Yang, but it will not uphold this duty.

26. The City of Minneapolis violated *Monell v. Dept. of Social Servs.* by exhibiting deliberate indifference to Yang's pattern of constitutional misconduct.

27. This harrowing interaction harmed McGill. Aside from the frightening event—well outside the bounds of normal human experience—the trust he placed in government authorities and law enforcement officers has been lost.

28. As a direct and proximate result of the defendants' unconstitutional acts and omissions, McGill suffered an unconstitutional loss of liberty. His car was improperly seized. He continues to suffer the effects of being illegally seized, locked in a police vehicle, and threatened by a rogue police officer.

## COUNT ONE
## 42 U.S.C. § 1983
## FOURTH AMENDMENT
## VIOLATIONS AGAINST JER YANG
## IN HIS INDIVIDUAL CAPACITY

29. McGill incorporates the preceding allegations as if fully stated herein.

30. Yang's misconduct directly and proximately caused violations of McGill's Fourth Amendment rights to be free from unreasonable seizure, false arrest and false imprisonment.

31. Yang committed the above acts maliciously and with reckless disregard for whether McGill's rights would be violated.

5

32. As a direct and proximate result of Yang's acts, McGill suffered a terrifying loss of liberty, endured great mental harm both past and future, lost wages, lost value of working time, loss of enjoyment of life and a fundamental constitutional injury. McGill seeks compensatory damages in an amount to be determined by a jury.

33. McGill claims punitive damages against Yang in an amount to be determined by the jury. Punitive damages are available as a matter of right under *Smith v. Wade*, 461 U.S. 30 (1983), and such damages are not subject to the pleading requirements or differing standard of proof set forth in Minn. Stat. § 549.20.

34. McGill is entitled to recovery of his costs, including reasonable attorneys' fees under 42 U.S.C. § 1988.

## COUNT TWO
## 42 U.S.C. § 1983
## *MONELL* VIOLATIONS AGAINST THE
## CITY OF MINNEAPOLIS

35. McGill incorporates the preceding allegations as if fully stated herein.

36. Upon information and belief, the City of Minneapolis has the power to make official policy on particular issues.

37. The City of Minneapolis, with deliberate indifference to the rights of citizens, initiated, tolerated, permitted, failed to correct, promoted, and/or ratified a custom, pattern, or practice on the part of its officers, including defendant Yang, of improperly abusing the authority of law enforcement officers, illegally seizing individuals, and threatening individuals.

38. Through the City of Minneapolis' ratification and approval of its officers' actions, in both this case and others, and by failing to discipline its officers, there has been a policy, custom and practice of abusing authority, harassing individuals, and issuing threats of violence without sanction or consequence.

39. The constitutional deprivations suffered by McGill were directly and proximately caused by the aforementioned acts and omissions and by this defendant's customs, patterns and practices.

40. As a direct and proximate result of this defendant's acts and omissions, McGill suffered a profound loss of liberty, endured great mental harm both past and future, lost wages, lost value of working time, loss of enjoyment of life and fundamental constitutional injury. McGill seeks compensatory damages in an amount to be determined by a jury.

41. McGill is entitled to recovery of his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

WHEREFORE, plaintiff Ah'men McGill prays for judgment against the defendants as follows:

1. As to Count One, a money judgment against Jer Yang for compensatory and punitive damages in an amount to be determined by a jury, together with his costs, including reasonable attorneys' fees under 42 U.S.C. § 1988 and prejudgment interest.

2. As to Count Two, a money judgment against the City of Minneapolis for compensatory damages in an amount to be determined by a jury, together with his costs, including reasonable attorneys' fees under 42 U.S.C. § 1988 and prejudgment interest.

3. For injunctive relief, including the appropriate imposition of discipline against Yang, a change in the policies and procedures of the Minneapolis Police Department, and for an Order requiring the City of Minneapolis to properly investigate constitutional violations and impose discipline for constitutional violations so that its custom, pattern and/or practice of the unchecked misconduct by its officers is stopped.

4. For the placement of a permanent, public reprimand in the personnel file of Yang for his unconstitutional misconduct in this case.

5. For such other and further relief as this Court deems just and equitable.

GASKINS BENNETT BIRRELL SCHUPP L.L.P.

Date: April 20, 2017

s/Andrew J. Noel
Robert Bennett, #6713
Andrew J. Noel, #322118
333 South Seventh Street, #3000
Minneapolis, MN 55402
Telephone: 612-333-9500
rbennett@gaskinsbennett.com
anoel@gaskinsbennett.com
Attorneys for Plaintiff